IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CORINNE STERN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-697-WKW |
| | ) | |
| STATE OF ALABAMA | ) | |
| DEPT OF FORENSIC SCIENCES, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This case is before the court on the Motion for Summary Judgment (Doc. # 20) filed by Defendant State of Alabama Department of Forensic Services ("ADFS"). Plaintiff Corinne Stern ("Stern") brings claims of sex discrimination and retaliation against her former employer, State of Alabama, under Title VII of the Civil Rights Act of 1964 ("Title VII"). For the reasons set forth below, the summary judgment motion is due to be granted.

### **I. FACTS AND PROCEDURAL HISTORY**

Viewing the parties' evidentiary submissions in a light most favorable to the plaintiff, the court makes the following recitation of facts. At all relevant times, Mr. F. Taylor Noggle ("Noggle") was the Director of the ADFS and thus the appointing authority for the ADFS. (Noggle Aff. ¶ 2.) In September 2005, Noggle hired Dr. Jim Lauridson ("Lauridson") to be the Forensic Sciences Chief Medical Examiner. (*Id*. at ¶ 15.) As the most senior medical examiner, Lauridson would have also had the responsibility of being the Laboratory Director of the Montgomery Laboratory, which involves certain managerial and administrative duties,

including conducting performance evaluations of subordinates. About that time Noggle also hired the plaintiff, Dr. Corinne Stern ("Stern"), as a Forensic Sciences Medical Examiner. (Stern Dep. at 9-10.) She was not board certified, which precluded her from being classified as a Forensic Sciences Senior or Chief Medical Examiner. (Noggle Aff. ¶ 4.) However, because Lauridson recognized and valued Stern's experience and abilities, he asked Noggle to appoint Stern as the Laboratory Director, as Lauridson did not want the responsibility. (*Id.* ¶ 10.) Because State Personnel rules would not allow Stern to evaluate the performance of higher grade employees, Noggle and Lauridson agreed that Stern would be the Montgomery Laboratory Director so long as Lauridson would evaluate the Forensic Sciences Senior Medical Examiners (who were both Lauridson's subordinates and Stern's superiors), including Dr. Kenneth Snell ("Snell"). (*Id.* ¶ 15.)

There is no dispute that Stern expertly performed the duties of Laboratory Director. Nevertheless, when Lauridson announced his impending retirement effective July 31, 2006, Noggle made arrangements to reassign the duties of Laboratory Director to another medical examiner in the office. Stern asserts that Noggle did not explain his reasons for doing so. (Stern Dep. 19.) Noggle, on the other hand, explains that without Lauridson to conduct the performance evaluations of Stern's superiors, Stern would not be able to continue in the role of Laboratory Director. (Noggle Aff. ¶¶ 19, 21-22.) On August 2 or 3, 2006, Noggle appointed Snell, a Forensic Sciences Senior Medical Examiner who is board certified in anatomical and clinical pathology, as the new Laboratory Director. (*Id.* ¶¶ 19-20.) The

2

reassignment of managerial and administrative duties from Stern to Snell did not affect Stern's job title as Forensic Sciences Medical Examiner, nor did it involve a cut in her pay.[1] According to Stern, the reassignment did, however, diminish her "prestige in the relatively small forensic pathology community . . . because she was no longer in a position of leadership, and her position with the State and local Child Death Fatality Review Board was removed."  (Pl. Br. 2.)

Stern filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 7, 2006, after which she asserts that her assigned vehicle was taken away and that she was ostracized by her superiors.  As the new Laboratory Director, Snell had asked Noggle to have Stern return the state vehicle to the Laboratory. (Snell Aff. at 1; Noggle Aff. ¶ 23.)  On August 15, 2006, she amended her charge of discrimination to include retaliation.  On December 2, 2006, Stern resigned from her position "[d]ue to the circumstances that exist in this department and the failure of the administrative staff at Headquarters to remedy the situation."  (Stern Resignation Letter.) The EEOC issued a Right to Sue letter to Stern, and on August 1, 2007, Stern filed the Complaint (Doc. # 1) in the instant case. She brings claims of sex discrimination (Count I) and retaliation (Count II) under Title VII.  Stern asserts that ADFS's motivation for removing her from the position of Lab Director was because she is female.  Stern claims that, because she filed an EEOC claim, the ADFS retaliated against her by taking away her car and by allowing her

---

[1] Noggle explains that under State Personnel rules one does not suffer a "demotion" unless there is a loss of job title and income.  (Noggle Aff. ¶ 24.)

coworkers to make demeaning comments and to refuse to assist her with autopsies. Stern seeks declaratory and injunctive relief on both counts, compensatory damages in the amount of $300,000, attorney's fees and expenses, and equitable relief, including back pay and reinstatement or front pay. (Compl. at 7.)

ADFS has denied any discrimination and filed a motion for summary judgment. (Doc. # 20.) The motion has been fully briefed and is ready for resolution.

## II. JURISDICTION AND VENUE

Because the plaintiff's claims arise under Title VII, the court exercises subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations supporting both.

## III. STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). The movant can meet this burden by presenting evidence showing there is no genuine

issue of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if a "'reasonable jury could return a verdict for the non-moving party.'" *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

### A. *Count One – Sex Discrimination*

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

5

In order to establish a Title VII sexual discrimination claim using circumstantial evidence, a plaintiff must first make out a prima facie case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Here, we have an alleged adverse employment action that is somewhat atypical; it involves neither a reduction in force (as suggested by ADFS's cited cases) nor a failure to promote (as Stern has implied with her cited cases). The Supreme Court has noted that "[t]he facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from respondent [here] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13. Because there is no dispute that Stern's management duties over the Lab were taken away from her and reassigned to Snell, the court finds that the elements of Stern's prima facie case are as follows: (1) she was a member of a protected class at the time of the reassignment of duties; (2) she was qualified to perform the duties that were reassigned to another; (3) the reassignment of duties constituted an adverse employment action; and (4) the duties were reassigned to someone outside the protected class. *See Hinton v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000).

The parties do not explicitly address all of the elements of the plaintiff's prima facie case. However, the court finds that, although apparently framed as a legitimate, non-discriminatory reason for Stern's demotion, ADFS impliedly challenges Stern's qualifications to be Lab Director upon Lauridson's retirement. (*See* Answer ¶ 33; ADFS's Suppl. Br. 16-17.)

Notwithstanding the court's assumption that the reassignment of managerial and administrative duties associated with the Laboratory Director designation constitutes an "adverse employment action" suffered by Stern,[2] she has not established a prima facie case of sex discrimination. Stern has not shown that there is a genuine issue of material fact with respect to her qualifications for the position she occupied after Lauridson's retirement. Stern argues that "board certification is not as important a factor as Defendant suggests" (Pl. Br. at 5); however, Stern neglects to address Noggle's assertion that State Personnel requirements do not allow a person to evaluate the performance of her superiors. Moreover, Stern acknowledges that a Senior Medical Examiner, such as Snell, must be board certified and concedes that she was not in fact board certified. Snell was in a position superior to Stern, and, as such, Stern could not conduct reviews of Snell's and other Senior Medical Examiners' job performances. Thus, the court must conclude that Stern was not qualified to retain the job duties of Laboratory Director after Lauridson retired.

Even if she were qualified, Noggle's explanation for events is a legitimate, non-discriminatory reason for the reassignment of duties, which Stern has not overcome by

---

[2] The court assumes without deciding that the reassignment of the Laboratory Director duties constitutes an adverse employment action. *But see Sampath v. Immucor, Inc.*, 271 Fed. Appx. 955, 962 (11th Cir. 2008) (finding that a reassignment of job duties where salary, hours, benefits, and title are unchanged, but where fewer subordinates are assigned to supervisor, was not a serious enough change in employment to constitute an adverse employment action, despite supervisor's subjective view that the reassignment was adverse); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1243-44 (11th Cir. 2000) (finding that reassignment of the designation of "officer in charge" is not an adverse employment action notwithstanding the loss of prestige).

persuading the court that the reason is merely pretext. Thus, the summary judgment motion with respect to the discrimination claim will be granted.

### B. *Count Two – Retaliation*

Stern claims that the ADFS retaliated against her because she filed an EEOC complaint for sex discrimination. To state a prima facie claim of retaliation, "a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

Although it concedes Stern engaged in protected expression, the ADFS does challenge the element of "adverse employment action." ADFS reiterates Stern's complaints of retaliation as follows: (1) the vehicle being taken away from her, (2) Snell telling people that Stern had been demoted, (3) ADFS permitting a male pathology technician to refuse to assist Stern, and (4) general ostracization by her male coworkers and superiors. (*See* Compl. ¶ 27.) The ADFS argues that these actions do not rise to the level of a "serious and material" change in the terms, conditions, or privileges of Stern's employment. The proper standard to adjudge this element of the prima facie case, however, is whether the employer conduct that "has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related." *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). This is an objective standard; the plaintiff must show that a reasonable employee would find the challenged

conduct "materially adverse," which means that the conduct would have dissuaded the reasonable employee from making a charge of discrimination. *See Burlington*, 548 U.S. at 68.

The prima facie case of retaliation fails. Stern's allegations of retaliatory conduct, individually or collectively, are not substantial enough to be deemed "materially adverse." The court reminds Stern that Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace. *Davis*, 245 F.3d at 1239 (internal quotation marks and citations omitted). Snell's comments, the difficulties with the pathology technician, and the "general ostracization" – although unpleasant – are not actionable.[3] In certain instances, making an employee return a state vehicle to the employer might be materially adverse. But here such action is a matter of ADFS policy; the state vehicle is assigned to the Laboratory Director, and Stern no longer fulfilled those duties. Noggle merely enforced an internal policy, and Stern presented no evidence of discriminatory enforcement as a result of her EEOC charge. "When an employer applies its standard policies in a nondiscriminatory manner, its action is not objectively adverse." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11 th Cir. 2006).

Even if Stern had made out a prima facie case, she has not offered sufficient evidence to persuade the court that the ADFS's legitimate, non-discriminatory reasons for the alleged

---

[3] And, there is no proof that ADFS was aware of the pathology technician's refusal to assist Stern, let alone that ADFS "permitted" it to happen.

9

retaliatory conduct. Thus, the summary judgment motion with respect to the retaliation claim will be granted.

## V.  CONCLUSION

For the reasons stated above, the Motion for Summary Judgment (Doc. # 20) is GRANTED.  An appropriate judgment will be entered.

DONE this 18th day of December, 2008.

                    /s/  W. Keith Watkins
              UNITED STATES DISTRICT JUDGE